IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| Stephen Noviello, | § | |
| *Plaintiff*, | § § § | |
| v. | § | Case No. 3:22-cv-01342 |
| iVest 360 LLC d/b/a Fast Capital 360, | § § § | |
| *Defendant*. | § § § | |

# COMPLAINT

Plaintiff Stephen Noviello, by and through the undersigned counsel, files this Complaint against Defendant, iVest 360 LLC d/b/a Fast Capital 360 ("Defendant" or "Fast Capital 360"), for violations of (1) the federal Telephone Consumer Protection Act ("TCPA") and its regulations and (2) Texas law governing telephone solicitation, alleging as follows:

## INTRODUCTION

1. In mid-April 2022, Plaintiff received a barrage of illegal telemarketing calls made on behalf of Defendant Fast Capital 360 to solicit applications for small business loans. DTX Business Solutions LLC ("DTX")—Defendant's agent for generating and transferring live telephonic leads—made the calls to find prospective customers for Defendant, qualify them according to Defendant's criteria, and then transfer the calls to Defendant. Plaintiffs received as many as seven of these calls in less than 90 minutes.

2. Plaintiff sought redress under the TCPA, demanding that the calls stop, but DTX—a foreign entity with minimal U.S. presence—ignored him. Fast Capital 360 initially engaged, disclaiming any responsibility for DTX's conduct, but has since ignored Plaintiff for weeks.

3. Defendant's stonewalling forced Plaintiff to sue. Fast Capital 360 cannot direct DTX to make calls on its behalf, accept the leads generated therefrom, yet disclaim liability when DTX harms consumers by making prohibited calls.

4. Defendant's refusal to engage with Plaintiff in good faith to resolve their dispute has needlessly increased the time, money, and effort required for Plaintiff to vindicate his rights. Plaintiff therefore seeks the greatest amount of damages and penalties authorized by law both to compensate him for the harms he suffered and to deter Fast Capital 360 and others from violating telemarketing laws or skirting their legal responsibility for the violations of their agents.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction over Counts I, II, and III under 28 U.S.C. § 1331, because the claims arise under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (holding that federal courts have federal question jurisdiction over private actions brought under the TCPA).

6. This Court has supplemental jurisdiction over Counts IV and V under 28 U.S.C. § 1367.

7. This Court has personal jurisdiction over Fast Capital 360 because Defendant purposefully availed itself to the State of Texas and to this District, and there is a sufficient relationship between Defendant's purposeful contacts with Texas and the litigation:

    a. Defendant targets Texas when marketing small business loans and regularly conducts business in this District, including telephone solicitation.

    b. Defendant's agent, DTX, called Plaintiff's Dallas-area phone number (with area code 214) to generate leads for Fast Capital 360's loan products.

  c. These calls to Texas injured Plaintiff in Texas, creating a causal link among Defendant, the forum, and the litigation that exceeds the non-causal affiliation that is sufficient to support specific personal jurisdiction. *See Ford Motor Co. v. Mont. Eight Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021).

8. Venue is proper under 28 U.S.C. § 1391(b)(2).

## PARTIES AND OTHER ENTITIES

9. Plaintiff Stephen Noviello is a natural person domiciled in Texas who received the incessant and intrusive calls made on behalf of Fast Capital 360 to market its loans.

10. Defendant iVest 360 LLC d/b/a Fast Capital 360 is a foreign limited liability company organized and existing under the laws of Pennsylvania, whose office is located at 95 James Way, Suite 113, Southampton, PA 18966. Defendant markets small business loans to Texas residents through telemarketing and online advertising. Defendant acted through its agents, employees, officers, members, managers, successors, assigns, principals, and/or representatives.

11. Non-party DTX Business Solutions, LLC is a third-party telemarketer that placed the calls at issue to Plaintiff on behalf of Fast Capital 360. On information and belief, DTX has no registered agent and no legal entity registered to do business and in good standing in any jurisdiction within the United States, and DTX's physical operations and assets are primarily overseas. DTX acted through its agents, employees, officers, members, managers, successors, assigns, principals, and/or representatives.

## FACTUAL ALLEGATIONS

12. The TCPA was enacted to protect consumers' privacy interests by prohibiting unwanted, repetitive, and invasive telephone solicitations.

13. On or about mid-April 2022, Plaintiff began receiving such calls from 305-496-4451 to his Dallas-area cellular telephone number, 214-XXX-0779.

14. Plaintiff is the subscriber to a cellular telephone service for this number and uses it primarily for residential purposes.

15. Plaintiff's number has been registered on the National Do Not Call Registry since January 15, 2016.

**A.     Plaintiff receives at least eight prohibited calls marketing Fast Capital 360 loans.**

16. Plaintiff received at least eight telephone calls on behalf of Fast Capital 360 placed by DTX telemarketers from 305-496-4451:

- April 14, 2022, at 12:06pm CT
- April 19, 2022, at 12:00pm CT
- April 19, 2022, at 1:09pm CT
- April 19, 2022, at 1:10pm CT
- April 19, 2022, at 1:11pm CT
- April 19, 2022, at 1:11pm CT
- April 19, 2022, at 1:11pm CT
- April 19, 2022, at 1:12pm CT

17. Plaintiff did not have an established business relationship with Defendant (or DTX), nor did Plaintiff consent to any of these calls.

18. As the log shows, Plaintiff received as many as seven calls in a little more than an hour and three calls within a single minute.

19. No caller provided an address or telephone number for Fast Capital 360 (or DTX).

20.     On information and belief, DTX or its telemarketers used an automatic telephone dialing system, as defined by 47 U.S.C. § 227(a)(1), to make the calls.[1]

21.     Plaintiff infers an ATDS was used because:

   a.   several calls came in rapid succession, including three calls made within a single minute;

   b.   Plaintiff heard a long pause and dead airtime upon answering calls but before being connected to a live agent; and

   c.   random or sequential generation explains how DTX obtained and dialed Plaintiff's number, considering Plaintiff did not give it to DTX or otherwise consent to the calls.

   d.   Had DTX obtained Plaintiff's number from a pre-existing list, rather than through random or sequential generation, the list likely would have been scrubbed against the National Do Not Call Registry and Plaintiff's number removed.

22.     DTX's placement of nonemergency telephone calls on behalf of Fast Capital 360 to Plaintiff's cellular telephone using an ATDS without Plaintiff's prior express consent violated 47 U.S.C.A. § 227(b) and 47 C.F.R. § 64.1200(a).

23.     DTX's placement of multiple calls on behalf of Fast Capital 360 within a twelve-month period to Plaintiff's residential phone line, listed on the National DNC Registry since 2016, violated § 227(c) and 47 C.F.R. § 64.1200(c).

---

[1] "The term 'automatic telephone dialing system' means equipment which has the capacity— (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

24. The failure of DTX telemarketers calling Plaintiff on behalf of Fast Capital 360 to provide all information required by law to allow Plaintiff to identify and contact the ultimate source of the calls, Fast Capital 360, violated 47 U.S.C. 64.1200(d)(4).

25. DTX's violations described in Paragraphs 22–24 were knowing and willful because DTX had "reason to know, or should have known, that [its] conduct would violate the statute." *Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 899 (W.D. Tex. 2001). Bad faith is not required.

26. DTX knew or should have known that its conduct would violate the TCPA and its regulations because DTX operates in the highly regulated telephone solicitation industry and expressly markets its live transfer leads as "DNC and TCPA compliant."

27. DTX claims to know the requirements for making TCPA-compliant telemarketing calls and thus knew or should have known that the calls complained of herein violate the TCPA and its regulations.

**B.    Fast Capital 360 is vicariously liable for DTX's TCPA Violations.**

28. Fast Capital 360 is "vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers," such as DTX. *In re Joint Pet. filed by Dish Network*, LLC, 28 F.C.C.R. 6574, 6582 (2013).

29. DTX was Defendant's agent when it made the prohibited calls. Fast Capital 360 directs, controls, authorizes, and pays DTX to generate live-transfer leads for Defendant's small business loans through telephone solicitation DTX performs on behalf of Fast Capital 360.

30. Fast Capital 360 requires, authorizes, or at least permits DTX telemarketers to identify themselves to called parties as representatives of Fast Capital 360.

31. Fast Capital 360 sets the criteria for qualifying leads, which DTX must follow, and DTX transfers leads qualified on those criteria exclusively to Fast Capital 360.

32. On information and belief, Fast Capital 360 writes or at least approves the call script used by DTX telemarketers qualifying leads for Fast Capital 360.

33. Defendant's Business Advisors represent to live-transferred leads that DTX telemarketers are their Fast Capital 360 associates, are with Fast Capital 360, or otherwise say nothing to disturb the impression that DTX telemarketers work for, and speak and act on behalf of, Fast Capital 360.

34. From a DTX telemarketer's initial call through a Fast Capital 360 Business Advisor's acceptance of a completed loan application, the telemarketing of Fast Capital 360's small business loans constitutes a singular, coordinated marketing effort devised, authorized, directed, and controlled by Defendant, the principal, with DTX acting as Defendant's agent.

35. DTX, acting with actual authority, made the prohibited calls identified in Paragraph 16, qualified Plaintiff according to Fast Capital 360's criteria, and then live-transferred Plaintiff to Defendant's Business Advisors to continue marketing loans.

36. Alternatively, even assuming DTX lacked actual authority, DTX had apparent authority to make the prohibited calls.

37. On one of the calls, a DTX telemarketer, "Max," told Plaintiff he was "with Fast Capital 360." Max transferred Plaintiff to Shon Rome, a Fast Capital 360 Business Advisor who told Plaintiff Max was his "associate" and identified him as a Fast Capital 360 telemarketer.

38. This manifestation of assent by Fast Capital 360's representative to Plaintiff about DTX, a telemarketer using Fast Capital 360's name, led Plaintiff to reasonably believe DTX was acting as Fast Capital 360's agent and to rely on that belief when continuing the call with Mr. Rome.

39.     Even assuming DTX lacked both actual and apparent authority, Fast Capital 360 ratified DTX's telemarketing calls by accepting the benefits therefrom, including the live transfer of exclusive, qualified leads and any resulting applications and loans.

C.     **Plaintiff repeatedly seeks a private resolution of the TCPA violations, but Defendant ignores him.**

40.     In emails and telephone calls with Mr. Rome and Eric Ortlieb (another Fast Capital 360 Business Advisor), Plaintiff asked Fast Capital 360 to make the calls stop and notified Defendant of its liability under the TCPA. Defendant, through its "tech team," investigated.

41.     On April 21, 2022, Defendant identified DTX as the originating call center and concluded there was "no viable reason" for any call but the first. Fast Capital 360 says it removed Plaintiff's number from its database, and it gave Plaintiff DTX's contact information.

42.     Defendant also sent the results of its investigation to DTX, which accepted them (as it had to because it was Defendant's agent) and purportedly complied by adding Plaintiff's number to its internal DNC database.

43.     That same day, Plaintiff emailed both DTX's owner and its Operations Manager, seeking an end to the calls and statutory damages under the TCPA, but DTX did not respond. Plaintiff flagged the failure to respond in a second email, sent May 11, 2022, and requested DTX's internal DNC policy, see 47 C.F.R. § 64.1200(d)(4), but DTX ignored that email, too.

44.     Unable to elicit a response from the caller, DTX, Plaintiff looked again to the party for whom the calls were made, Fast Capital 360.

45.     On May 12, 2022, Plaintiff emailed Mr. Ortlieb a letter explaining Defendant's vicarious liability for DTX's TCPA violations and citing relevant legal authority. Plaintiff requested a response within five days but received no response at all.

46. Then Plaintiff hired the undersigned counsel, who sent a certified letter seeking resolution of the matter by May 31, 2022. Defendant ignored Plaintiff's counsel, too.

47. With no other option to force Fast Capital 360 to respond, Plaintiff filed suit. Defendant's attempts to evade its legal obligations and refusal to work in good faith toward an agreed resolution compel Plaintiff to assert the claims below.

## COUNT I – ATDS Violations
### Violation of the TCPA, 47 U.S.C. § 227(b); 47 C.F.R. § 64.1200(a)

48. Plaintiff incorporates by reference each and every paragraph of this complaint as if fully set forth herein.

49. DTX used an ATDS to make unsolicited, non-emergency telephone calls on behalf of Fast Capital 360 to Plaintiff's cellular telephone number without his consent, in violation of 47 U.S.C. § 227(b) and 47 C.F.R. § 64.1200(a) (the "ATDS Violations").

50. Fast Capital 360 authorized, controlled, directed, caused, agreed, or otherwise permitted DTX to act as Defendant's agent for generating leads through the live transfer of telemarketing calls. DTX placed the calls at issue with actual or apparent authority from Defendant, or Defendant otherwise ratified DTX's telephone solicitations by accepting the resulting benefits, including the live transfer of a call with Plaintiff that DTX initiated. *See* Part B, *supra*. Defendant is thus vicariously liable for the ATDS Violations.

51. Plaintiff suffered the following injuries from each and every ATDS Violation: invasion of privacy; intrusion on Plaintiff's right of seclusion; occupation of Plaintiff's telephone line by unwelcome calls, rendering the phone unavailable for legitimate calls; inconvenience; loss of usefulness of Plaintiff's phone; unnecessary expenditure of Plaintiff's phone's battery power; degradation of the battery; and trespass to Plaintiff's chattel, namely his cellular telephone.

52. Under § 227(b)(3), Plaintiff is entitled to receive at least $500 in damages for each ATDS Violation. Because the violations were knowing or willful, *see* Paragraphs 25–27, the Court may award up to $1500 per violation.

53. Accordingly, Plaintiff seeks an order under Section 227(b)(3) awarding $1500 for each ATDS Violations.

## COUNT II – DNC Violations
### Violation of the TCPA, 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)

54. Plaintiff incorporates by reference each and every paragraph of this complaint as if fully set forth herein.

55. The TCPA prohibits telephone solicitation of residential telephone subscribers whose numbers are registered on the National Do-Not-Call Registry. 47 U.S.C. § 227(c)(5).

56. Even though Plaintiffs number has been registered on the National DNC Registry since January 15, 2016, DTX made unsolicited telephone solicitations to Plaintiff's residential telephone line, without Plaintiff's consent, and thereby violated 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c) (the "DNC Violations").

57. Fast Capital 360 authorized, controlled, directed, caused, agreed, or otherwise permitted DTX to act as Defendant's agent for generating leads through the live transfer of telemarketing calls. DTX placed the calls at issue with actual or apparent authority from Defendant, or Defendant otherwise ratified DTX's telephone solicitations by accepting the resulting benefits, including the live transfer of a call with Plaintiff that DTX initiated. *See* Part B, *supra*. Defendant is thus vicariously liable for the DNC Violations.

58. Plaintiff suffered the following injuries from each and every DNC Violation: invasion of privacy; intrusion on Plaintiff's right of seclusion; occupation of Plaintiff's telephone line by unwelcome calls, rendering the phone unavailable for legitimate calls; inconvenience; loss

of usefulness of Plaintiff's phone; unnecessary expenditure of Plaintiff's phone's battery power; degradation of the battery; and trespass to Plaintiff's chattel, namely his cellular telephone.

59.  Under § 227(c)(5), Plaintiff is entitled to receive up to $500 in damages for each violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c). Because the violations were knowing and willful, *see* Paragraphs 25–27, the Court may award up to $1500 per violation.

60.  Accordingly, Plaintiff seeks an order under Section 227(c)(5) awarding $1500 for each DNC Violation.

## COUNT III
### Violation of TCPA Regulations, 47 C.F.R. § 64.1200(d)(4)

61.  Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein.

62.  TCPA regulations require a person or entity making a call for telemarketing purposes to provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person may be contacted. 47 C.F.R. § 64.1200(d)(4).

63.  No caller provided all the requisite information, and each such failure violated 47 C.F.R. § 64.1200(d)(4), which is actionable under 47 U.S.C. § 227(c)(5), and hindered Plaintiff's ability to determine who was responsible for the calls and demand that they stop.

64.  Defendant authorized, controlled, directed, caused, agreed to, or otherwise permitted the calls by its agent, DTX, and accepted the benefits of live transfers from calls that illegally withheld required information, rendering Defendant vicariously liable for its agents' violations of the TCPA and its regulations. *See* Part B, *supra*.

65. Under § 227(c)(5), Plaintiff is entitled to receive up to $500 in damages for each such violation. Because the violations were knowing and intentional, *see* Paragraphs 25–27, the Court may award up to $1500 per violation.

66. Accordingly, Plaintiff seeks an order under Section 227(c)(5) awarding $1500 for each failure to provide all information required by 47 C.F.R. § 64.1200(d)(4).

## COUNT IV
## Violation of Tex. Bus. & Com. Code § 305.053

67. Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein.

68. Texas Business and Commerce Code § 305.053 makes any violation of the TCPA, 47 U.S.C. § 277, an independent violation of state law subject to a state-law remedy: a plaintiff who prevails in an action for damages under § 305.053 is entitled to the greater of $500 for each violation or plaintiff's actual damages. The damages for knowing or intentional violations may be increased to not more than the greater of $1,500 for each violation or three times the plaintiff's actual damages.

69. Each of the TCPA violations described in Counts I, II, and III constitutes an independent violation of Texas state law and is subject to the state-law remedy described above.

70. Because the violations were knowing or intentional, *see* Paragraphs 25–27, the Court may award up to $1500 per violation.

71. Defendant directed, controlled, authorized, or otherwise permitted the illegal calls to Plaintiff by its agent, DTX. As explained above, DTX acted with actual or apparent authority from Fast Capital 360 and, even if not, Defendant ratified DTX's action by accepting the benefits of live transfers from DTX's illegal calls. *See* Part B. Thus, Defendant is vicariously liable for DTX's violations of § 305.053 under general agency principles.

72. Plaintiff thus seeks an award under § 305.053 of $1500 for each violation of § 305.053 with the number of violations determined by reference to the total number of TCPA violations found under Counts I, II, and III.

## COUNT V
## Violation of Tex. Bus. Org & Com. Code § 302.001, *et seq.*

73. Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein.

74. Texas law requires those whose products or services are offered through telephone solicitation from or to a location in Texas to provide information about their telemarketing activities and obtain a registration certificate from the State. Tex. Bus. & Com. Code § 302.101–102. The purpose of the requirement is to "protect persons against false, misleading, or deceptive practices in the telephone solicitation business." *Id.* at 302.003.

75. Defendant failed to comply, committing numerous independent violations of Texas law, including at least the following:

   a. Failure to obtain a certificate of registration for the business location(s) from which each of at least 8 telephone solicitations were made;

   b. Failure to post the registration certificate in a conspicuous place at the location for which the certificate is issued;

   c. Failure to post in close proximity to the registration certificate the name of each individual in charge of the location;

   d. Failure to make available at each of Defendant's business locations a copy of the entire registration statement and any addenda for inspection by a purchaser or by a representative of a government agency; and

  e.  Failure to provide the complete street address of both (i) the location from which DTX made each of at least 8 telephone solicitations to Plaintiff and (ii) Defendant's principal location.

76. Each solicitation is a separate violation for which Fast Capital 360 is subject to a penalty of up to $5,000. *Id.* § 302.101, 302.302(a).

77. Defendant's violations of Chapter 302 harmed Plaintiff because he had to spend many hours and eventually hire an attorney to track down information that should have been publicly available. To this day, Plaintiff does not have sufficient information about DTX and the locations from which the calls were made and the persons responsible for them.

78. Plaintiff seeks to recover from Defendant "a civil penalty of not more than $5,000 *for each violation*."

79. Plaintiff is further "entitled to recover all reasonable costs of prosecuting this action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

  a.  A money judgment, requiring Defendant to pay Plaintiff the maximum amount in statutory damages and civil penalties allowed by law;

  b.  An injunction prohibiting Defendant from making, causing, directing, controlling, or allowing any agent to make prohibited telemarketing calls to Plaintiff's cellular telephone number;

    c.    An award of costs, requiring Defendant to pay to Plaintiff all reasonable costs of prosecuting this action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees; and

    d.    Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Dated: June 21, 2022

Respectfully submitted,

/s/ *R. Kent Piacenti*
R. Kent Piacenti
Texas Bar No. 24083660
LAW OFFICE OF R. KENT PIACENTI, PLLC
8350 N. Central Expy, Suite 1900
Dallas, TX 75206
Tel: 214-888-3639
Fax: 214-396-2025
kent@piacentilaw.com

***Attorney for Plaintiff Stephen Noviello***