**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| STEPHEN NOVIELLO, | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| vs. | ) | No. 3:22-CV-1342-B |
| | ) | |
| IVEST 360, LLC d/b/a FAST CAPITAL | ) | |
| 360, et al., | ) | |
| *Defendants.* | ) | Referred to U.S. Magistrate Judge[1] |

<u>**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**</u>

Based on the relevant filings and applicable law, the defendants' *MOTION to Dismiss Third Amended Complaint*, filed August 18, 2023 (doc. 75), should be **GRANTED**, and all claims against them should be **DISMISSED without prejudice** for lack of personal jurisdiction, and *Plaintiff's Motion for Leave to File Fourth Amended Complaint*, filed September 22, 2023 (doc. 86), should be **DENIED**.

## I. BACKGROUND

### A.    <u>Factual Background</u>

This case arises out of allegedly illegal automated telemarketing calls received by Stephen Noviello (Plaintiff). (*See generally* doc. 51.) He sues iVest 360, LLC d/b/a Fast Capital 360 (Company); DTX Business Solutions LLC (Telemarketer); Barbara Weidner, the former Chief Executive Officer and current Chief Operations Officer of Company (CEO); and Roie Raitses, the Chief Marketing Officer of Company (CMO) (Defendants). (*Id.* at 1.)[2] He claims that Defendants violated the Telephone Consumer Protection Act (TCPA) and the regulations implementing it, as well as various provisions of state law. (*Id.*)

---

[1] The motions were referred by electronic order of reference dated November 8, 2023. (doc. 95.)

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

Company, a Pennsylvania corporation, identifies businesses that are eligible for small business loans and assists those businesses in applying for and obtaining those loans. (*Id.* at 7.) It offers its services throughout the United States and obtains leads primarily through online webpages. (*Id.* at 3-4.) It contracted with Telemarketer, a call center, to obtain additional "live leads" over the phone. (*Id.* at 5-6.) Telemarketer identifies and calls individuals who may be interested in Company's services, and once the individual has answered the phone call, transfers the call to one of many companies with which Telemarketer contracts. (*Id.* at 12.) When the calls are transferred to Company, one of its "business advisors" connects with the caller to offer Company's services. (*Id.*) CEO and CMO allegedly devised Company's digital marketing strategy and overall business model; that strategy included contracting with Telemarketer and permitting it to place calls such as the ones that Plaintiff received on behalf of Company. (*Id.* at 4-6.)

Plaintiff alleges that during a five-day period in April of 2022, he received eight or nine telemarketing calls from Telemarketer on Company's behalf. (*Id.* at 8-9.) On at least one of those calls, the person on the line identified himself as an employee of Company. (*Id.* at 12.) Plaintiff did not have a preexisting business relationship with Company and did not seek out its services online. (*Id.* at 9.) Shortly after receiving the calls, he informed Company that he believed Defendants had violated the TCPA. (*Id.* at 16.) He also sent Telemarketer "a demand under the TCPA." (*Id.* at 27.) He contends that Company, CEO, and CMO are vicariously liable for any wrongful conduct by Telemarketer, and that all Defendants engaged in a conspiracy to hide their alleged TCPA violations by "agree[ing] to manufacture evidence that purports to both pre-exist and justify the unlawful calls." (*Id.* at 11-15, 26.) He seeks monetary damages and injunctive relief. (*Id.* at 29-30.)

B.    **Procedural History**

Plaintiff originally sued only Company when he filed this lawsuit in June of 2022. (doc. 1.) After it moved to dismiss this case for failure to state a claim (doc. 10), he filed his first amended complaint on August 9, 2022. (doc. 12.) Company's motion to dismiss was deemed moot, and it answered the first amended complaint on August 23. (docs. 13, 15.)

A scheduling order entered on September 1, 2022, established the following relevant deadlines: motions for leave to amend the pleadings were to be filed by February 16, 2023, discovery would close on May 17, 2023, and dispositive motions were to be filed by June 14, 2023. (doc. 20 at 1-2.) Plaintiff requested and received leave to file a second amended complaint, and it was filed on February 17, 2023. (*See* docs. 21-23.) It added Telemarketer as a defendant. (doc. 23.) Company answered the second amended complaint on March 3. (doc. 26.) On April 4, 2023, Plaintiff sought leave to file a third amended complaint (TAC). (doc. 30.) Following a hearing, the motion was granted, and he filed his TAC on June 7, 2023. (docs. 50, 51.) The TAC added CEO and CMO as defendants in their individual capacities. (*Id.*)

A subsequent amended scheduling order set the following relevant deadlines: amended pleadings were to be filed by August 6, 2023, discovery was to close on October 30, 2023, and dispositive motions were to be filed by November 27, 2023. (doc. 62 at 1-2.) On July 24, 2023, Company answered the TAC. (doc. 70.) CEO and CMO timely filed their motion to dismiss on August 18, 2023, (doc. 75), and Plaintiff moved for leave to amend his complaint for a fourth time on September 22, 2023, more than one month after the deadline for filing such motions. (doc. 86.)

## II. MOTION FOR LEAVE TO AMEND

Motions to amend made before the expiration of a scheduling order's deadline are governed by Federal Rule of Civil Procedure 15(a)(2), which provides that a court "should freely give leave

when justice so requires." *Fahim v. Marriott Hotel Servs.*, 551 F.3d 344, 348 (5th Cir. 2008). Post-deadline motions to amend, however, are governed by Rule 16(b)(4)'s more stringent standard, and they may be granted "only for good cause and with the judge's consent." *Id.* (citing *S & W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A.*, 315 F.3d 533, 535 (5th Cir. 2003)). This requires a showing that "the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *Fahim*, 551 F.3d at 348 (quoting *S & W Enters.*, 315 F.3d at 535).

Four factors are relevant in determining good cause: (1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) the potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice. *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003) (citing *S & W Enters.*, 315 F.3d at 536). "[T]he court considers the four factors holistically," and "does not mechanically count the number of factors that favor each side." *Hoffman v. L & M Arts*, No. 3:10-CV-0953-D, 2012 WL 4321739, at *5 (N.D. Tex. Sept. 21, 2012). Ultimately, the court has "broad discretion" to deny leave to amend "to preserve the integrity and purpose of [its] pretrial [scheduling] order." *S & W Enters.*, 315 F.3d at 535. Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply for deciding whether to grant or deny leave. *Hoffman*, 2012 WL 4321739, at *2.

## A.    <u>Explanation for Untimeliness</u>

The first factor requires an explanation for the movant's failure to timely amend. *See S & W Enters.*, 315 F.3d at 536. Courts have found sufficient explanation in cases involving developments in applicable law and when new facts become known through depositions and document production while the case is pending. *See Robles v. Archer W. Contractors, LLC*, No. 3:14-CV-1306-M, 2015 WL 4979020, at *3 (N.D. Tex. Aug. 19, 2015); *Settlement Cap. Corp.,*

*Inc. v. Pagan*, 649 F. Supp. 2d 545, 566-67 (N.D. Tex. 2009). Courts have not found sufficient explanation when a scheduling mistake caused a missed deadline, a party misunderstood a statute, or a party did not understand the scheduling order. *See STMicroelectronics, Inc. v. Motorola, Inc.*, 307 F. Supp. 2d 845, 850 (E.D. Tex. 2004) ("[A] party's failure to meet a deadline due to inadvertence is tantamount to no explanation at all." (internal quotation marks omitted)); *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990) (finding a scheduling mistake in counsel's office was not a "satisfactory explanation for which relief may be granted"); *Sun River Energy, Inc. v. McMillan*, No. 3:13-CV-2456-D, 2014 WL 4771852, at *4 (N.D. Tex. Sept. 25, 2014) ("[M]isunderstanding of the law, however, constitutes mere inadvertence, which is tantamount to no explanation at all." (internal quotation marks omitted)); *see also Regions Bank v. L. Offices of Sherin Thawer, P.C.*, No. 3:11-CV-1285-L, 2012 WL 1191850, at *6 (N.D. Tex. Apr. 10, 2012) (denying a motion to amend because plaintiff could not identify a "reasonable explanation for the delay"). Additionally, "the court may deny the motion [for leave to amend] if the movant knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint." *Clayton v. Conocophillips Co.*, No. H-08-3447, 2010 WL 1463466, at *3 (S.D. Tex. Apr. 12, 2010) (internal quotation marks omitted) (collecting cases).

Here, Plaintiff seeks leave to amend his complaint for a fourth time to add allegations establishing personal jurisdiction over CEO and CMO. (doc. 86 at 2.) He contends that these allegations could not have been included in the TAC because "the challenge to personal jurisdiction was, until recently, unanticipated." (*Id.* at 8.) He notes that the motion to dismiss based in part on a purported lack of personal jurisdiction was filed after the deadline for amending

pleadings had passed, so he "could no longer amend the complaint as of right", and "the deadline for amending the pleadings could not reasonably be met despite Plaintiff's diligence." (*Id.* at 7-8.)

In essence, Plaintiff seeks leave to amend his complaint to rectify potential deficiencies in his jurisdictional allegations, and he contends that he should be permitted to do so because he did not anticipate a challenge to jurisdiction. This is not a persuasive explanation for his untimeliness. *See Valcho v. Dall. Cnty. Hosp. Dist.*, 658 F. Supp. 2d 802, 815 (N.D. Tex. 2009) (explaining that plaintiff's unawareness of pleading deficiencies until after the issue was raised in defendant's motion for summary judgment was "not a reasonable explanation for failing to seek timely leave to amend"). "It is Plaintiff's responsibility, not the Court's, to timely plead [his] best case within the deadlines set by the Scheduling Order." *Avialae S De RL De CV v. Cummins Inc.*, No. EP-19-CV-380-PRM, 2020 WL 7488177, at *3 (W.D. Tex. Aug. 24, 2020). Moreover, it is unclear when Plaintiff discovered the additional facts that he would like to add to his complaint; they appear to be the kinds of facts that Plaintiff knew or should have known prior to filing the TAC. (*See* doc. 86 at 2.) He also knew that jurisdiction was likely going to be challenged by CEO and CMO several weeks before the deadline for amending his complaint lapsed. (*See* doc. 86 at 8; doc. 92 at 7.) Accordingly, the first factor weighs against granting the motion for leave to amend.

B. **Importance of the Amendment**

Under factor two, Plaintiff must identify the importance of his untimely amendment. *See S & W Enters.*, 315 F.3d at 536. "Courts deem 'amendments to be important where they potentially provide[ ] additional grounds for [a party] to recover, or directly affect[ ] [a party's] prospects of ultimate recovery.'" *Feldman v. Stryker Corp.*, No. 3:18-CV-1416-S, 2020 WL 2507684, at *2 (N.D. Tex. May 15, 2020) (citations and internal quotation marks omitted) (quoting *Kouzbari v. Health Acquisition Co., LLC*, No. 3:18-CV-0126-D, 2018 WL 6514766, at *3 (N.D. Tex. Dec. 11,

2018)); *see Maynard v. PayPal, Inc.*, No. 3:18-CV-0259-D, 2018 WL 5776268, at *4 (N.D. Tex. Nov. 2, 2018).

Here, Plaintiff seeks to amend his TAC to provide additional details that he contends support a finding that personal jurisdiction exists over CEO and CMO. (*See* doc. 86-1 at 3-9.) He maintains that this amendment is important because their motion to dismiss is based, in part, on an argument that personal jurisdiction over them is lacking. (doc. 86 at 9.) Plaintiff also claims that he "is unlikely to recover if [CEO and CMO] are not part of this case." (*Id.*) Because the proposed amendment would allegedly permit Plaintiff to recover from two additional defendants who may otherwise be dismissed from the suit, it is important. *See Sievert v. Howmedica Osteonics Corp.*, No. 3:18-CV-2175-S, 2020 WL 2507678, at *2 (N.D. Tex. May 15, 2020) (explaining that an amendment that cures pleading defects sufficiently showed the importance of the proposed amendment). This factor weighs in favor of granting the motion for leave to amend.

## C.    **Potential Prejudice and Possibility of a Continuance**

The third and fourth factors require consideration of the potential prejudice that an amendment will cause the defendant and the availability of a continuance to cure any such prejudice. *See S & W Enters.*, 315 F.3d at 536.

Although courts have not directly defined prejudice in the Rule 16(b) context, "prejudice" is generally defined as "[d]amage or detriment to one's legal rights or claims." Black's Law Dictionary (10th ed. 2014). Courts have found prejudice to a defendant when amendments would delay trial, restart a case at an earlier stage, or otherwise unfairly limit a party's ability to present its case at trial. *See, e.g.*, *Navarro v. Microsoft Corp.*, 214 F.R.D. 422, 424 (N.D. Tex. 2003) (finding prejudice even though the new causes of action in the proposed amended complaint were "virtually identical," because the defenses were not necessarily the same); *King v. Life Sch.*, No.

3:10-CV-0042-BH, 2011 WL 5242464, at *2 (N.D. Tex. Nov. 3, 2011) (finding potential prejudice when "allowing the new claims would require essentially restarting the lawsuit for amended pleadings, discovery, and motions"). Courts have also found prejudice where the defendant has expended resources preparing and submitting a motion to dismiss. *See In re Enron Corp.*, Nos. H-01-3624, H-03-3508, 2007 WL 207028, at *3 (S.D. Tex. Jan. 23, 2007) (considering time and expense of preparing a motion to dismiss as prejudicial to opponent of an untimely motion for leave to amend). The third factor therefore does not favor an amendment because it would restart this case at the pleading stage, setting the timeline back several months, and CEO and CMO have already gone through the time and expense of preparing a motion to dismiss.

As to the fourth factor, the availability of a continuance, allowing a continuance at this stage of the proceedings would compound rather than cure the prejudice to the defendants by delaying the resolution of the case even further and increasing the total expenses incurred defending this action. *See George v. Harris Cnty.*, No. H-10-3235, 2012 WL 2744332, at *5 (S.D. Tex. July 9, 2012) (finding that in addition to the expense incurred in filing new dispositive motions, "the delay of awaiting a ruling from the court[ ] would exacerbate the potential prejudice to the defendants" (citations omitted)). This factor therefore also disfavors granting Plaintiff's motion for leave to amend.

Considered holistically, the four factors weigh against granting Plaintiff leave to amend his complaint, and his motion should be denied.[3]

---

[3] Amendment would also be futile because the proposed fourth amended complaint merely provides more of the same jurisdictional allegations with respect to CEO and CMO. (*See* doc. 86-1 at 4-9.) Plaintiff himself states that he is suing CEO and CMO in their individual capacities. (*See id.* at 7.) Accordingly, and as discussed in depth below, Plaintiff is obligated to plead personal jurisdiction as to CEO and CMO individually and separately from any acts that Company undertook in or directed at Texas. *See Skidmore Energy, Inc. v. KPMG*, No. 3:03-CV-2138-B, 2004 WL 2008514, at *7 (N.D. Tex. Sept. 3, 2004). The fourth amended complaint simply provides additional detail regarding CEO's and CMO's control over Company's marketing strategy, which included hiring Telemarketer. The additional factual allegations do not support the conclusion that CEO and CMO purposefully made minimum contacts, as individuals, with the state of Texas.

### III. MOTION TO DISMISS

CEO and CMO move to dismiss under Rule 12(b)(2) for lack of personal jurisdiction and under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. (doc. 76 at 7.) Rule 12(b)(2) allows for dismissal of an action when a court lacks personal jurisdiction over a defendant. *See* Fed. R. Civ. P. 12(b)(2). "The concept of personal jurisdiction comprises two distinct components: amenability to jurisdiction and service of process." *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1264 (5th Cir. 1983). The first component means that "a defendant is within the substantive reach of a forum's jurisdiction under applicable law," while the latter "is simply the physical means by which that jurisdiction is asserted." *Id.* "Both service and amenability must be present to authorize a district court to adjudicate the rights of the parties." *Terry v. Raymond Int'l, Inc.*, 658 F.2d 398, 401 (5th Cir. 1981), *overruled on other grounds by Point Landing, Inc. v. Omni Cap. Int'l, Ltd.*, 795 F.2d 415 (5th Cir. 1986).

The exercise of personal jurisdiction over a non-resident defendant is proper, and the non-resident is therefore amenable to jurisdiction, when: (1) the non-resident is subject to jurisdiction under the laws of the state in which the court sits; and (2) the exercise of jurisdiction over the defendant comports with the due process requirements of the United States Constitution. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-74 (1985); *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001) (per curiam). A defendant is amenable to the personal jurisdiction of a federal court sitting in diversity to the same extent as a state court in the same forum. *Pedelahore v. Astropark, Inc.*, 745 F.2d 346, 347 (5th Cir. 1984); *see also* Fed. R. Civ. P. 4(e)(1), 4(h)(1). Because the Texas long-arm statute authorizes the exercise of personal jurisdiction to the same extent allowed by the due process clause of the Fourteenth Amendment, only the federal due process inquiry need be addressed. *Latshaw v. Johnston*, 167 F.3d 208, 211

(5th Cir. 1999); Tex. Civ. Prac. & Rem. Code § 17.041 *et seq*. The exercise of personal jurisdiction over a non-resident defendant is compatible with due process when "(1) that defendant has purposefully availed [itself] of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *Panda Brandywine*, 253 F.3d at 867.

The "minimum contacts" prong of the analysis is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The non-resident defendant's availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). There are two types of minimum contacts: those giving rise to general jurisdiction and those giving rise to specific jurisdiction. *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010), *cert. denied*, 564 U.S. 1052 (2011). General jurisdiction exists where the non-resident's contacts with the forum state are unrelated to the cause of action but are "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). Specific jurisdiction is appropriate where the nonresident has purposefully directed its activities at the forum state and the "litigation results from alleged injuries that arise out of or relate to those activities." *Alpine View*, 205 F.3d at 215 (internal quotation marks omitted) (quoting *Burger King*, 471 U.S. at 472). It is a claim-specific inquiry and requires less pervasive contacts with the forum state than general jurisdiction. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). The plaintiff has the burden of establishing minimum contacts. *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989). Above all, the

"constitutional touchstone" of personal jurisdiction requires that the defendant "purposefully establish[ ] 'minimum contacts' in the forum state." *See Lyons v. Chase Home Lending*, No. 3:11-CV-1056-N-BH, 2011 WL 4907084, at *3 (N.D. Tex. Sept. 1, 2011), *rec. adopted*, 2011 WL 4840724 (N.D. Tex. Oct. 11, 2011) (citing *Burger King*, 471 U.S. at 474.)

"Minimum contacts must be met as to *each defendant*," including CEO and CMO. *Skidmore Energy, Inc. v. KPMG*, No. 3:03-CV-2138-B, 2004 WL 2008514, at *7 (N.D. Tex. Sept. 3, 2004) (emphasis in original); *see also Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 n.13 (1984) ("[J]urisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him."); *Rush v. Savchuk*, 444 U.S. 320, 331-32 (1980); *Brady v. Burtt*, 979 F. Supp. 524, 529 (W.D. Mich. 1997) ("In general, the activities of an officer on behalf of a corporation do not confer jurisdiction over the officer individually."); 4A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1069.4 (4th ed.) ("[P]ersonal jurisdiction over individual officers and employees of a corporation may not be predicated on the federal court's jurisdiction over the corporation itself, unless the individuals are engaged in activities within the forum that would subject them to jurisdiction.").

Where, as here, no evidentiary hearing is conducted, the plaintiff need only make a prima facie showing in support of jurisdiction. *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003). The plaintiff's uncontroverted factual allegations in the complaint must be accepted as true, and all factual disputes must be resolved in his favor. *Alpine View*, 205 F.3d at 215; *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). Courts are not required "to credit conclusory allegations, even if uncontroverted," however. *Panda Brandywine*, 253 F.3d at 869.

Plaintiff concedes that CEO and CMO are clearly not subject to general personal jurisdiction in Texas. (*See* doc. 80 at 2.) He alleges that specific jurisdiction over them exists

because they "developed the business model" and "a digital marketing plan" that Company purportedly used to obtain leads through Telemarketer. (doc. 80 at 3.) They allegedly "targeted Texas when marketing small business loans and regularly conduct[ed] business" in Texas, "cultivated and maintained business relationships with banks" in Texas, "executed the marketing component of [Company's] business model by contracting with [Telemarketer] to make telephone solicitations" in Texas, and ultimately "conspired to cover up the TCPA violations" in Texas.[4] (doc. 51 at 4-6.) In short, Plaintiff alleges that CEO and CMO purposefully availed themselves of the benefits of conducting business in Texas by virtue of their extensive involvement in the process of obtaining leads through Telemarketer.

In their declarations, CEO and CMO maintain that they had very little control over the strategy, business model, practices, and methodology employed by Telemarketer. (*See* doc. 77 at 5-6, 9-10.) Neither they nor Company has ever had any direct ties to Texas—they leased no office space in the state, held no meetings or business trips in Texas, and never maintained a phone number in Texas. (*Id.*) Neither they nor Company controlled any aspect of Telemarketer's business, including how and from whom they obtained their live leads. (*Id.*) They state that the employees of Company did not know any information related to the leads obtained by Telemarketer, and Telemarketer did not know which of the many companies to which it provided leads a particular call would be transferred. (*Id.*) Instead, Telemarketer "transferred the call to [Company] via a blind transfer, meaning that prior to the transfer [Telemarketer] did not know where/who the call would be transferred." (doc. 77 at 6, 10.)

---

[4] The parties note the possible applicability of the fiduciary shield doctrine, which dictates that "an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual[.]" *Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985). "Several [Texas] court have held, however, that the fiduciary shield doctrine only applies to prevent general jurisdiction, and does not protect an officer from the exercise of specific personal jurisdiction as to intentional torts or fraudulent acts for which the officer may be held individually liable." *Hewlett-Packard Co. v. Byd:Sign, Inc.*, No. 6:05-CV-456, 2006 WL 2822151, at *6 (E.D. Tex. Sept. 28, 2006). Because general jurisdiction is not at issue here, the fiduciary shield doctrine does not apply.

Based on these facts, and resolving any disputes in his favor, *see Alpine View*, 205 F.3d at 215, Plaintiff has not made a prima facie showing that specific personal jurisdiction over CEO and CMO exists. They did not have any personal connections unrelated to their roles as CEO and CMO of Company to Texas. (*See* doc. 77 at 5-6, 9-10). This alone supports the conclusion that personal jurisdiction does not exist, because personal jurisdiction over an employee of a corporation as an individual cannot be predicated on the corporation's contacts with the forum state. *See Skidmore Energy*, 2004 WL 2008514, at *7. Moreover, CEO and CMO did not have direct control over the leads generated by Telemarketer, and they therefore did not purposefully target Texas for the purposes of conducting their business there. *See Alvord v. Fluent Inc.*, No. 2:19-CV-885-DBB-CMR, 2020 WL 4346960, at *4 (D. Utah July 29, 2020) (holding that there was no personal jurisdiction over the officers of a company for purposes of a TCPA claim because the plaintiff did not establish that the officers had involvement in the telemarketing scheme used by a third party subcontractor); *Katz v. Liberty Power Corp., LLC*, --- F. Supp. 3d ---, No. 18-CV-10506-ADB, 2023 WL 6201557, at *4 (D. Mass. Sept. 22, 2023). Plaintiff alleges only that CEO and CMO had control over "the business model" and "a digital marketing plan" for Company. (*See, e.g.* doc. 80 at 3.) He does not allege that this type of control equates to control over Telemarketer's strategies. The uncontroverted facts in CEO's and CMO's declarations show that they were not able to direct Telemarketer with respect to how, from whom, or from where it would obtain leads for Company. (doc. 77 at 5-6, 9-10.)

Additionally, the business contacts that Plaintiff alleges CEO and CMO cultivated in Texas are unrelated to the underlying claims in this lawsuit. Plaintiff maintains that CEO and CMO had relationships with banks and other entities in Texas for the purpose of furthering their small business loan ventures. (doc. 51 at 4-6.) These connections to Texas have nothing to do with the

alleged TCPA violations that occurred because Telemarketer placed unlawful calls to Plaintiff, however. Finally, to the extent CEO and CMO were involved in an alleged conspiracy to hide any TCPA violations, that conduct did not occur in Texas because none of the Defendants is located in or carries out day-to-day business administration in Texas. These facts show that CEO and CMO did not "purposefully establish minimum contacts" with Texas, *see Lyons*, 2011 WL 4907084 (citing *Burger King*, 471 U.S. at 474), or that they would have reasonably anticipated being compelled to appear in a Texas court, *see World-Wide Volkswagen*, 444 U.S. at 297. Accordingly, Plaintiff has failed to establish that CEO and CMO have the requisite minimum contacts with the forum state to create specific personal jurisdiction.[5]

Plaintiff has not carried his burden of establishing that personal jurisdiction exists over CEO and CMO, and his claims against them should be dismissed under Rule 12(b)(2).[6]

## IV. RECOMMENDATION

Plaintiff's motion for leave to amend should be **DENIED**. The defendants' motion to dismiss should be **GRANTED** and all claims against them should be **DISMISSED without prejudice** for lack of personal jurisdiction.

**SO RECOMMENDED** on this 1st day of December, 2023.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[5] Because Plaintiff has failed to establish that CEO and CMO had the requisite minimum contacts with Texas, discussion of the extent to which the exercise of personal jurisdiction would comport with traditional notions of fair play and substantial justice is unnecessary. *See S. Copper, Inc. v. Specialloy, Inc.*, 245 F.3d 791, No. 00-50408, 2000 WL 1910176, at *4 (5th Cir. Dec. 22, 2000) (per curiam) (table decision); *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 329 n.20 (5th Cir. 1996).

[6] Because dismissal for lack of personal jurisdiction has been recommended, it is unnecessary to reach CEO's and CMO's arguments regarding Plaintiff's failure to state a claim on which relief can be granted. *See Flores v. Koster*, No. 3:11-CV-0726-M-BH, 2013 WL 4874117, at *5 n.9 (N.D. Tex. June 28, 2013).

## INSTRUCTIONS FOR SERVICE AND
## <u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F. 3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE